**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION**

DILLEN STEEBY and PAULA McMILLIN
individually and on behalf of all others
similarly situated

                    Plaintiffs,

      v.

TOYOTA MOTOR SALES, U.S.A. INC.

                 Defendant.

Case No. _____

## CLASS ACTION COMPLAINT

### NATURE OF THE CASE

1.     Plaintiffs bring this class action on behalf of themselves and all other owners of Toyota Sienna automobiles for model years 2011-2016 ("Class Vehicles"). Toyota sold the Class Vehicles without disclosing to consumers that the power sliding door opening operations in the vehicles become overloaded or stuck causing the doors to fail to latch. As a result, the doors have a propensity to open while driving, causing a risk of injury to a vehicle occupant ("Defect").

2.     As a result of the Defect, Toyota issued a recall and instructed all class owners to cease use of the power sliding doors. Because Toyota has failed to remedy the Defect, owners of Class Vehicles are not able to use the power sliding door function and are not provided the warranty coverage promised.

3.     Moreover, prior to the recall, Toyota had been aware of the defect, yet concealed the safety defect in order to avoid warranty claims and in order to to continue selling the vehicle.

4.     Toyota's conduct violates Missouri and Oregon's consumer protection statutes, warranty law and common law. Plaintiffs bring this suit on behalf of themselves and the

proposed Classes to enjoin Toyota from continuing to conceal the problem and the availability of repairs from consumers and/or to obtain damages, restitution, and all other available relief.

## PARTIES

5.    Plaintiff Dillen Steeby is a citizen of Jackson County, Missouri.

6.    Plaintiff Paula McMillin is a citizen of Clark County, Nevada.

7.    Defendant Toyota Motor Sales, U.S.A., Inc. (hereinafter "Toyota") has its headquarters and principal place of business in Torrence, California.

## JURISDICTION AND VENUE

8.    This Court has jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d). There are at least 100 members in the proposed plaintiffs classes, the aggregated claims of the individual Class members exceed the sum or value of $5,000,000, exclusive of interests and costs, and this is a class action in which Toyota and class members are citizens of different states.

9.    This Court may exercise jurisdiction over Toyota because Toyota is registered to conduct business in Missouri; has sufficient minimum contacts in Missouri; and intentionally avails itself of the markets within Missouri through the promotion, sale, marketing, and distribution of its vehicles, thus rendering the exercise of jurisdiction by this Court proper and necessary. Moreover, Toyota's wrongful conduct (as described herein) foreseeably affects consumers in Missouri.

10.    Plaintiff Steeby purchased his Toyota vehicle in the State of Missouri, and suffered damages as a result of Toyota's conduct within Missouri.

2

11.     Plaintiff McMillin purchased her Toyota vehicle in Oregon and uses her Toyota vehicle in the State of Missouri and transports her grandchildren to and from school in Missouri. Further, Plaintiff McMillin has her Toyota vehicle serviced in Missouri.

12.     Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.

## SUBSTANTIVE ALLEGATIONS

### The Toyota Power Sliding Door Defect

13.     Toyota manufactures, markets, distributes, and warrants automobiles in the United States, including Toyota Sienna minivans.

14.     All model year 2011-2016 Siennas manufactured and distributed by Toyota (the "Class Vehicles") have defective power sliding doors that can be overloaded, jammed and/or stuck, causing the door to open while driving if in an unlatched position.

15.     The Class Vehicles suffer from a Defect that prevents normal usage of the power sliding door operation.

16.     Toyota knew or should have known that the Sienna sliding doors were defectively designed. The Class Vehicles contained a defect to allow the power sliding doors to become unlatched, jammed and/or stuck and open while moving down the roadway.

17.     Toyota either knew or should have known that the power sliding door design was defective and would be prone to opening while driving on the roadway.

18.     Significantly, Siennas manufactured outside of the affected model year ranges are also designed differently and have not experienced the Defect seen in the affected model years. For example, the 2017 Siennas, which were designed in or around 2015, do not contain the Defect in the affected Class Vehicles.

3

19.     Toyota admits that the power sliding doors present safety issues to passengers, created by the ability of the power sliding doors to open while driving on the roadway, and that these safety issues are serious.

20.     In explaining the recall, Toyota stated to its dealers that "the sliding door motor circuit could be overloaded, opening the fuse for the motor. If this occurs when the door latch is in an unlatched position, the door could open while driving, increasing the risk of injury to a vehicle occupant."

21.     Below are examples of complaints lodged with NHTSA reflecting drivers' safety concerns:

•    2011 Sienna: TL* TAKATA RECALL. THE CONTACT OWNS A 2011 TOYOTA SIENNA. WHILE DRIVING VARIOUS SPEEDS, THE REAR PASSENGER SIDE SLIDING DOOR INDEPENDENTLY OPENED WITHOUT WARNING. THE VEHICLE WAS NOT DIAGNOSED OR REPAIRED. THE CONTACT RECEIVED NOTIFICATION OF NHTSA CAMPAIGN NUMBERS: 16V858000 (STRUCTURE) AND 16V340000 (AIR BAGS); HOWEVER, THE PARTS TO DO THE REPAIRS WERE UNAVAILABLE. THE CONTACT STATED THAT THE MANUFACTURER EXCEEDED A REASONABLE AMOUNT OF TIME FOR THE RECALL REPAIRS. THE MANUFACTURER WAS NOTIFIED. THE FAILURE MILEAGE WAS 107,000. PARTS DISTRIBUTION DISCONNECT. THE VIN WAS UNAVAILABLE. (date of incident: 10/10/16, date of complaint: 12/29/16).[1]

•    2012 Sienna: TL* THE CONTACT OWNS A 2012 TOYOTA SIENNA. THE CONTACT RECEIVED NHTSA CAMPAIGN NUMBER: 16V858000 (STRUCTURE) HOWEVER, THE PARTS TO DO THE REPAIR WERE UNAVAILABLE. IN ADDITION, THE CONTACT STATED OCCASIONALLY THE DOOR WOULD NOT LATCH. THE CONTACT STATED THAT THE MANUFACTURER EXCEEDED A REASONABLE AMOUNT OF TIME FOR THE RECALL REPAIR. THE MANUFACTURER WAS NOTIFIED OF THE ISSUE AND STATED THAT THEY DID NOT

---

[1] NHTSA ID Number: 10938424.

HAVE A TIME OF WHEN THE PARTS WOULD BE MADE AVAILABLE. TOOL CONFIRMS PARTS NOT AVAILABLE. (date of incident: 01/06/17, date of complaint: 04/21/17).[2]

- 2014 Sienna: TL* THE CONTACT OWNS A 2014 TOYOTA SIENNA. THE CONTACT STATED THAT THE REAR PASSENGER SLIDING DOOR OPENED INDEPENDENTLY. ONCE THE BUTTON WAS PRESSED TO CLOSE THE DOOR, THE DOOR ATTEMPTED TO CLOSE, BUT DID NOT. THE CONTACT RECEIVED NOTIFICATION OF NHTSA CAMPAIGN NUMBER: 16V858000 (STRUCTURE); HOWEVER, THE PARTS TO DO THE REPAIR WERE UNAVAILABLE. THE MANUFACTURER EXCEEDED A REASONABLE AMOUNT OF TIME FOR THE RECALL REPAIR. THE MANUFACTURER WAS NOTIFIED OF THE ISSUE. THE CONTACT WAS NOTIFIED THAT THE MANUFACTURER CONSIDERED THE FAILURE COLLATERAL DAMAGE AND IT WAS MORE COST EFFECTIVE FOR THE CONTACT TO DRIVE THE VEHICLE. THE VIN WAS UNKNOWN. THE FAILURE MILEAGE WAS APPROXIMATELY 67,000. VIN TOOL CONFIRMS PARTS NOT AVAILABLE. (date of incident: 03/21/17, date of complaint: 04/04/17).[3]

- 2011 Toyota Sienna: THE POWER SLIDING DOORS FAILED ON THE VEHICLE AND WHILE I WAS DRIVING DOWN THE ROAD THE DOOR STARTED SLIDING OPEN. MY KIDS WERE SAFELY FASTENED IN THEIR SEATBELTS BUT THE LATCH AND SAFETY LATCHES BOTH FAILED AND THIS COULD HAVE RESULTED IN AN ACCIDENT OR INJURY. THE DEALER SAID THE LATCHES CORRODED WHICH CAUSE THE FAILURE AND PROPER LUBRICATION COULD HAVE PREVENTED THE DEFECT BUT I CAN'T FIND THAT ANYWHERE IN THE SERVICE MANUAL AND I ASKED THE DEALER TO SHOW ME THAT ON THEIR LIST OF CHECKS AND HE DID NOT HAVE ANY DOCUMENTATION THAT THEY CHECK THAT. I HAVE HEARD THAT MANY OF THESE LATCHES FAIL AND NEED TO BE REPLACED BUT TOYOTA DOESN'T SEEM TO THINK IT IS AN ISSUE. (date of incident: 5/29/13, date of complaint: 5/30/13).[4]

---

[2] NHTSA ID Number: 10979730.

[3] NHTSA ID Number: 10970442.

[4] NHTSA ID Number: 10514321.

- <u>2011 Toyota Sienna:</u> BOTH POWER-SLIDING SIDE VAN DOORS ON MY 2011 TOYOTA SIENNA XLE AWD DO NOT FUNCTION PROPERLY OR SAFELY IN ALL INSTANCES WHEN USING THE EXTERIOR DOOR HANDLES. APPROXIMATELY 25% OF ATTEMPTS TO OPEN THE SIDE DOORS USING THE EXTERIOR DOOR HANDLES TO ACTIVATE THE POWER SLIDE MECHANISM FAIL. THE FAILURE RESULTS IN THE DOORS ONLY OPENING ABOUT SIX INCHES, THEN STOPPING IN PLACE WHILE AN AUDIBLE ALARM SOUNDS. THE GAP IS LARGE ENOUGH FOR AN ADULT OR CHILD TO PUT ARM THROUGH THE GAP. AFTER THE AUDIBLE ALARM CEASES, THE DOOR CAN BE MANUALLY CLOSED IN A "JERKY" FASHION. THE FOOR FAILURE ONLY HAPPENS WHEN USING THE EXTERIOR HANDLES. WHEN USING THE KEY FOB, INTERIOR CONTROLS LOCATED IN THE CEILING ABOVE THE REAR VIEW MIRROR, OR INTERIOR CONTROLS NEAR THE SLIDING DOORS, THE DOORS WORK CORRECTLY. (date of incident: 6/1/11, date of complaint: 2/13/12).[5]

- <u>2011 Toyota Sienna:</u> THE CONTACT OWNS A 2011 TOYOTA SIENNA. THE CONTACT NOTICED THAT THE REAR SLIDING DOOR REMAINED STUCK IN AN OPEN POSITION INTERMITTENTLY. THE FAILURE OCCURRED WHILE USING THE MANUAL OPERATION OR POWER ASSIST BUTTON. THE VEHICLE WAS TAKEN TO THE DEALER ON FIVE OCCASIONS AND THEY WERE UNABLE TO DUPLICATE THE FAILURE. A COMPLAINT WAS FILED WITH THE MANUFACTURER AND THEY ADVISED THE CONTACT THAT A REMEDY WOULD BE AVAILABLE IN MARCH 2011; HOWEVER, WHEN THE VEHICLE WAS TAKEN TO THE DEALER TO BE REPAIRED THE DEALER INFORMED THE CONTACT THAT THE PART WAS NOT AVAILABLE. THE CURRENT MILEAGE WAS 5,200 AND THE FAILURE MILEAGE WAS 100. (date of incident: 10/1/10, date of complaint: 4/13/11).[6]

- <u>2011 Toyota Sienna:</u> 2011 TOYOTA SIENNA LE POWER SLIDING DOORS HAVE JAMMED MULTIPLE TIMES. HAS HAPPENED 4-5 TIMES NOW WITH ONLY 285 MILES ON IT. THIS IS POTENTIALLY A VERY SERIOUS MALFUNCTION THAT COULD COST A LIFE. ALL PASSENGERS SHOULD BE ABLE TO EVACUATE IF NEEDED. CALLED TOYOTA BUT THEY SAY THAT HAVE NOT GOTTEN ANY

---

[5] NHTSA ID Number: 10447806.

[6] NHTSA ID Number: 10395795.

COMPLAINTS? WILL TAKE IT IN AND SEE WHAT THEY SAY. (date of incident: 3/1/11, date of complaint: 3/4/11).[7]

- 2011 Toyota Sienna: DRIVER SIDE POWER SLIDING DOOR ON 2011 TOYOTA SIENNA REPEATEDLY (BUT NOT INTERMITTENTLY) JAMS UPON OPENING -- HAPPENED ALMOST IMMEDIATELY AFTER PURCHASED. BECAUSE THE PROBLEM WAS NOT REPLICATED BY TOYOTA SERVICE AND NO COMPUTER ERROR CODE WAS REGISTERED, THEY WERE PROHIBITED BY TOYOTA FROM ATTEMPTING TO SOLVE THE PROBLEM. THIS WAS DESPITE THE FACT THAT I HAD PHONE VIDEO DOCUMENTING THE PROBLEM, A TOYOTA SALESPERSON OBSERVED THE DOOR JAMMED, AND PREVIOUS TOYOTA TECHNICAL SERVICE BULLETINS RELATED TO THE SIENNA POWER SLIDING DOOR PROBLEMS (BO010-01). I WAS TOLD THAT UNTIL ENOUGH PEOPLE COMPLAIN, TOYOTA WON'T RECOGNIZE THAT THERE IS A PROBLEM AND WON'T DO ANYTHING ABOUT IT. THIS IS REMINISCENT OF THE TOYOTA ACCELERATOR PROBLEM THAT THEY REFUSED TO ADDRESS UNTIL THEY WERE FORCED TO. (date of incident: 1/1/11, date of complaint: 1/27/11).[8]

- 2011 Toyota Sienna: THE CONTACT OWNS A 2011 TOYOTA SIENNA. THE CONTACT STATE THAT UPON OPENING THE PASSENGER SLIDING DOOR HE HEARD A LOUD POPPING NOISE. HE ALSO NOTICED THAT THE DRIVERS SIDE SLIDING DOOR WAS ALSO MAKING THE SAME NOISE. THE VEHICLE WAS INSPECTED BY A DEALER WHO INFORMED HIM THAT THEY WERE AWARE OF THE FAILURE, BUT THEY DO NOT HAVE A CURRENT REPAIR FOR IT. THE VEHICLE WAS NOT REPAIRED. THE FAILURE MILEAGE WAS APPROXIMATELY 8,000. (date of incident: 11/13/10, date of complaint: 1/13/11).[9]

---

[7] NHTSA ID Number: 10386513.

[8] NHTSA ID Number: 103796344.

[9] NHTSA ID Number: 10376522.

## Toyota's Knowledge of the Defect and the Dangers Posed

22. Toyota knew or should have known when it sold the Class Vehicles that these vehicles contained the Defect.

23. Toyota has known since before 2013 that there was a problem with the power sliding doors of the Class Vehicles, yet Toyota did not notify owners of Class Vehicles of the Defect until several years later. For example, as demonstrated above in paragraph 21 Toyota received numerous complaints about power sliding door problems going back to 2011.

24. Despite Toyota's knowledge going back to 2011 that its power sliding doors were defective, it continued to sell Class Vehicles that suffered from the Defect and did not issue a recall until November 2016.

25. Toyota knew or should have known that the construction of its Sienna doors were faulty. Toyota nonetheless decided to sell Class Vehicles without altering the power sliding doors, putting Toyota owners, drivers, passengers, and others on the road at risk. Toyota did not tell customers that the power sliding door feature could become impeded causing the door not to properly latch and open while driving on the roadway. Toyota thus had exclusive and superior knowledge of the power sliding door Defect and actively concealed the Defect and corresponding danger from consumers who had no way to reasonably discover the problem before buying and driving their Class Vehicles.

26. As Toyota knows, a reasonable person would consider knowledge of the Defect important information and would not purchase or lease a vehicle with a dangerously defective door or would pay substantially less for the vehicle and its warranty.

27.     To the extent Toyota has acknowledged the Defect, Toyota has refused to make consumers whole. Toyota has issued a recall arising from the Defect that applies to Class Vehicles but has offered no repair or replacement.

28.     Shortly, after issuing the Safety Recall, Toyota issued a recall update including a "Frequently Asked Questions." The recall update indicated that "Toyota is currently preparing the remedy for this condition." This update also applied to Class Vehicles.

29.     Further, the update instructed, "that you disable the power sliding door system" to avoid the occurrence of the condition.

30.     Thus, even after the recall, consumers still do not receive the benefit of their bargain to receive a vehicle with safe and functioning sliding doors and a warranty that offers repair or replacement.

**Toyota's Concealment**

31.     Toyota had a duty to disclose these safety, quality, dependability, and reliability issues because Toyota consistently marketed the Class Vehicles as safe for their normal and intended use.

32.     Once Toyota made representations to the public about safety, quality, dependability, and reliability, it was under a duty to disclose the existence of the Defect, because where one does speak one must speak the whole truth and not conceal any information that would materially qualify those facts stated. A manufacturer that volunteers information about its product must be truthful, and the telling of a half-truth calculated to deceive constitutes fraud.

33.     Despite having overwhelming evidence of a defect and recognizing a problem, Toyota concealed the existence of the Defect from consumers including Plaintiff and Class

9

members until November 2016 when Toyota finally issued a recall, thereby attempting to allow the viable warranty claims of early purchasers to lapse.

34.     Toyota failed to publicize the fact that the Class Vehicles (which continued to be sold within its distribution networks) were defective. Toyota also did not immediately recall the defectively designed Class Vehicles, nor did it notify owners about the serious safety risks.

35.     In addition, Toyota had a duty to disclose these omitted material facts because they were known and/or accessible only to Toyota, which has superior knowledge and access to the facts, and Toyota knew they were not known to or reasonably discoverable by Plaintiff and the Class members.

36.     These omitted facts were material because they directly impact the safety, quality, and reliability of the Class Vehicles. Toyota possessed exclusive knowledge of the Defect and of quality control issues that rendered Class Vehicles inherently more dangerous and unreliable than similar automobiles.

37.     Toyota actively concealed and/or suppressed these material facts, in whole or in part, with the intent to induce Plaintiffs and the Class members to purchase Class Vehicles at a higher price that did not match their true value as well as to dissuade existing purchasers from making warranty claims within the stated warranty period.

38.     Plaintiffs and the Class members were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts. Plaintiff's and the Class Members' actions in purchasing or leasing Class Vehicles were justified in light of their lack of knowledge.

## Plaintiffs' Experience

### Dillen Steeby

39.     Plaintiff Dillen Steeby purchased his 2015 Toyota Sienna new in April 2015. He purchased the vehicle from Jay Wolfe Toyota, which was situated in Jackson County, Missouri.

40.     As part of purchasing the vehicle, Mr. Steeby understood the fact that the vehicle came with power sliding doors and a warranty.

41.     On November 22, 2016, Toyota sent Mr. Steeby a Safety Recall Interim Notice regarding the power siding door. Toyota also indicated that they were preparing a remedy for the condition.

42.     Mr. Steeby attempted to have the defect fixed at his dealership.

43.     Mr. Steeby has disconnected his power sliding door feature and is without the benefit of the power sliding doors.

44.     Had Mr. Steeby known of the power sliding door problem, he would not have purchased the vehicle, or he would have paid substantially less for it. His vehicle remains within Toyota's 3 year, 36,000-mile warranty.

### Paula McMillin

45.     Plaintiff Paula McMillin purchased her 2013 Toyota Sienna new in January 2013. She purchased the vehicle from Beaverton Toyota Co. Inc., which was situated in Beaverton, Oregon.

46.     As part of purchasing the vehicle, Ms. McMillin understood the fact that the vehicle came with power sliding doors and a warranty.

47.     On November 22, 2016, Toyota sent Ms. McMillin a Safety Recall Interim Notice regarding the power siding door. Toyota also indicated that they were preparing a remedy for the

11

condition.

48.     On December 19, 2016, Toyota sent Ms. McMillin an "Important Update" relating to the Safety Recall Interim Notice.

49.     In said update, Toyota suggested that in order to avoid the occurrence of the condition, Class Vehicle owners should disable the power sliding door system.

50.     Ms. McMillin has disconnected the power sliding door feature and is without that benefit.

51.     Had Ms. McMillin known of the power sliding door problem, she would not have purchased the vehicle, or she would have paid substantially less for it. Had she known earlier about the defect she would have attempted to have the defect repaired pursuant to Toyota's warranty.

## CLASS ACTION ALLEGATIONS

52.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs bring this action on behalf of themselves and the following proposed classes defined as follows:

Missouri Class

*All persons who on or after January 1, 2017, owned or leased a Class Vehicle in the State of Missouri.*

Oregon Class

*All persons who on or after January 1, 2017, owned or leased a Class Vehicle in the State of Oregon.*

53.     Excluded from the proposed classes is Toyota; any affiliate, parent, or subsidiary of Toyota; any entity in which Toyota has a controlling interest; any officer, director, or employee of Toyota; any successor or assign of Toyota; anyone employed by counsel for

Plaintiffs in this action; any judge to whom this case is assigned, his or her spouse, and all persons within the third degree of relationship to either of them, as well as the spouses of such persons; members of the judge's staff; and anyone who purchased a Class Vehicle for the purpose of resale.

54. **Numerosity**. Toyota sold thousands of Class Vehicles. Members of the proposed Classes number in the thousands and are thus too numerous to practically join in a single action. Class members may be notified of the pendency of this action by email, mail, and/or supplemented by published notice (if deemed necessary or appropriate by the Court).

55. **Predominance**. Common questions of law and fact exist as to all members of the proposed class and predominate over questions affecting only individual class members. These common questions include whether:

    a.    Class Vehicles were factory equipped with defective sliding doors;

    b.    Toyota knew or should have known about the Defect and, if so, when Toyota discovered the Defect;

    c.    Knowledge of the Defect would be important to a reasonable consumer;

    d.    Toyota concealed the existence of the Defect from potential customers;

    e.    Toyota has failed to provide a remedy for the Defect of the Class Vehicles or unreasonably delayed in doing so;

    f.    Plaintiffs and the Class are entitled to equitable relief, including declaratory relief, restitution, rescission, a preliminary and/or permanent injunction; and

    g.    Plaintiffs and the Class are entitled to damages.

56. **Typicality**.  Plaintiffs' claims are typical of the claims of the proposed Classes. Plaintiffs and the proposed Classes either purchased or leased a Class Vehicle that contains the same Defect, giving rise to substantially the same claims.

57. **Adequacy**.  Plaintiffs are adequate representatives of the proposed Classes because their interests do not conflict with the interests of the members of the Classes they seek to represent.  Plaintiffs have retained counsel competent and experienced in complex class action litigation, and Plaintiffs will prosecute this action vigorously by monitoring and directing the actions of class counsel.  The interests of members of the classes will be fairly and adequately protected by Plaintiffs and their counsel.

58. **Superiority**.  A class action is superior to other available means for the fair and efficient adjudication of this dispute.  The injury suffered by each Class member, while meaningful on an individual basis, is not of such magnitude as to make the prosecution of individual actions against Toyota economically feasible.  Even if Class members themselves could afford such individualized litigation, the court system could not.  In addition to the burden and expense of managing many actions arising from the Toyota defect, individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties and the court system presented by the legal and factual issues of the case.  By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

59. In the alternative, the proposed Classes may be certified because:

      a. the prosecution of separate actions by the individual members of the proposed Classes would create a risk of inconsistent or varying

adjudication with respect to individual Class members which would establish incompatible standards of conduct for Toyota;

b.    the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and

c.    Toyota has acted or refused to act on grounds generally applicable to the proposed Classes, thereby making appropriate final and injunctive relief with respect to the members of the proposed Classes as a whole.

**FIRST CAUSE OF ACTION**
**Missouri Breach of Warranty**
**(Plaintiff Dillen Steeby, Individually, and on behalf of the Missouri Class)**

**Express Warranty**

60.    Plaintiff Steeby, on behalf of himself and the proposed Class, hereby re-alleges the paragraphs above as if fully set forth herein.

61.    As fully pled above, Toyota had knowledge of the defects to its Class Vehicles and that they pose a serious safety risk to consumers like Plaintiff and Class members.

62.    Toyota expressly represented and warranted to Plaintiff and Class members that its Class Vehicles were safe and fit for their intended purposes.

63.    Toyota expressly represented and warranted the quality of the Class Vehicles against defects in materials and workmanship for a period of three years.

64.    Further, these warranties were necessarily important to the Plaintiff and ordinary consumers who would have chosen to purchase a different product if they had possessed

15

knowledge that the Defect would result in inability to use the power sliding door function and creating significant safety risks to occupants of the Class Vehicles.

65.     At the time that Toyota made these warranties, it knew the use for which the Class Vehicles were intended, and Toyota warranted that they were fit and safe for their intended purpose.

66.     At the time that Toyota made these warranties, it knew of the Defect in materials and workmanship inherent in the Class Vehicles, but continued to market the Class Vehicles by means of false and misleading information, and without acknowledging or warning consumers of the Defect, creating significant safety risks to occupants of the Class Vehicles.

67.     The Class Vehicles purchased by Plaintiffs and Class members did not conform to Toyota's promises and descriptions because, among others:

> a.     The design of the Class Vehicles suffers from a Defect that is known to allow the automatic door to open spontaneously while driving down the road Class Vehicles are used for their intended purpose, due to Toyota's choice of design. The Defect creates an unreasonably high likelihood of allowing the doors to open during normal and intended use.

> b.     The design of the Class Vehicles suffers from a Defect which is known to allow the sliding doors to spontaneously open while driving the roadway thus, making its occupants more likely to suffer increased injury or even death.

68.     Toyota has failed to remedy the defect.

69.     Plaintiff and the Class members have incurred damages including but not limited to the loss of the benefit of their bargain, the diminution of value of their Class Vehicles and inconvenience as described herein as a direct and proximate result of Toyota's breach.

## Implied Warranty

70.     At the time Toyota marketed and sold the Class Vehicles, Toyota knew of the use of the power sliding doors, and impliedly warranted the products to be of merchantable quality and sale fit for such use.

71.     Contrary to such implied warranty, the power sliding doors of the Class Vehicles were not of merchantable quality or safe or fit for the intended use, because they were and are unreasonably dangerous and unfit for the ordinary purposes for which they were sold.

72.     As a direct and proximate result of the breach of implied warranty, Plaintiff and the Class members have incurred damages including but not limited to the costs of repair of the damage to their Class Vehicles caused by the Defect, the diminution of value of their Class Vehicles, as well as the loss of the benefit of their bargain at the time they purchased or leased their Class Vehicles as described herein as a direct and proximate result of Toyota's breach.

73.     Plaintiff and the proposed Class members are entitled to recover damages, consequential damages, specific performance, diminution in value, costs, attorney's fees, rescission, and other appropriate relief.

### SECOND CAUSE OF ACTION
**Violation of the Missouri Merchandising Practices Act**
**Mo. Rev. Stat. §§ 407.010 *et seq*. ("the MMPA")**
**(Plaintiff Dillen Steeby, Individually, and on behalf of the Missouri Class)**

74.     Plaintiff, on behalf of himself and the proposed Class, hereby re-alleges the paragraphs above as if fully set forth herein.

17

75.     The Missouri Merchandising Practices Act ("the MMPA") provides that "[t]he act, use or employment by any person of any deception . . . [or] unfair practice, or the concealment . . . of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce . . . is declared to be an unlawful practice."  Mo. Rev. Stat. § 407.020.1.

76.     The enabling regulations for the MMPA define an "unfair practice" as conduct that (1) offends public policy; (2) is unethical, oppressive, and unscrupulous; (3) causes a risk of substantial injury to consumers; (4) was not in good faith; (5) is unconscionable; or (6) is unlawful. *See* Mo. Code Regs. Ann. tit. 15, § 60-8.

77.     Under the MMPA, the term "merchandise" is broadly defined to include "any objects . . . or services."  Mo. Rev. Stat. § 407.020.4. The Class Vehicles are "merchandise" within the scope of the MMPA.

78.     The MMPA authorizes private causes of action, and class actions.  Mo. Rev. Stat. §§ 407.025.1; 407.025.2. Plaintiff and members of the proposed Class are individuals entitled to bring suit and recover under the MMPA.

79.     When Toyota designed, developed, manufactured, marketed, and sold the Class Vehicles, it was involved in the conduct of trade and commerce under the MMPA.

80.     Since at least the start of 2013, Toyota sold the Class Vehicles knowing they contained the Defect that posed serious safety risks to consumers like Plaintiff and Class members.

81.     Nonetheless, Toyota concealed its knowledge of the Defect from consumers like Plaintiff and Class members and instead sold Class Vehicles as safe for normal use.

82. The Defect created and continues to create serious safety risks, which were concealed from consumers and omitted from Toyota's sales materials.

83. Toyota intentionally concealed the unreasonable safety risks associated with the defective Class Vehicles that were important facts to consumers like Plaintiff and Class members. No reasonable consumer would have knowingly bought or leased a Class Vehicle, or paid as much, if that consumer had known it was manufactured and distributed with the Defect.

84. Upon information and belief, Toyota knew of the defect as early as 2013. Indeed, in or around 2015 when Toyota changed the design of its 2017 vehicles to incorporate a change eliminating the Defect, it concealed the Defect of the earlier design from consumers including Plaintiff and Class members, failing to offer to repair or to remove the defective Class Vehicles from the stream of commerce even after attempting to remediate its own design errors.

85. Toyota's intentional misrepresentations, omissions and concealments of material facts constitute unfair and/or deceptive practices in violation of the MMPA.

86. Toyota violated the MMPA not only when it sold the Class Vehicles representing them to be safe, but also when Toyota failed to disclose to Plaintiff and the Class members that the Class Vehicles had the Defect which would cause the inability to use the power sliding door function or could otherwise cause injury. Toyota's conduct – its misrepresentations, omissions, and concealment – posed serious safety risks to consumers and the public.

87. Toyota violated the MMPA when it sold Class Vehicles that it knew were unsafe for ordinary and intended use, when it represented to the public that its Class Vehicles could be used safely, and when it failed to warn consumers that the Class Vehicles contained the Defect that posed serious safety risks to consumers and the public.

88.     Toyota's deceptive practices, including but not limited to marketing of the Class Vehicles, were designed to induce Plaintiff and the Class members to purchase the Class Vehicles containing the Defect and to avoid the cost of replacing, repairing or retrofitting the defective Class Vehicles already in use by consumers throughout Missouri.

89.     Toyota's violations of the MMPA were designed to conceal, and Toyota failed to disclose material facts about the Defect and the unreasonable safety risks of the Class Vehicles in order to induce Plaintiff and the Class members to purchase Class Vehicles and to avoid the cost of recalling, replacing, repairing or retrofitting the Class Vehicles.

90.     Plaintiff and the Class members suffered injury-in-fact as a direct result of Toyota's violations of the MMPA in that they have purchased or leased Class Vehicles that pose an immediate safety risk and will have to be repaired or replaced.

91.     Had Toyota disclosed the true quality and defective nature of the Class Vehicles, Plaintiff and Class members would not have purchased the Class Vehicles or would have paid substantially less for them or would have presented the vehicle for repair under the warranty.

92.     Plaintiff and Class members have also been denied the use of the power sliding door feature in their Class Vehicles and suffered as a result of Toyota's conduct.

93.     As a direct and proximate result of Toyota's unfair acts or practices alleged herein, Plaintiff and the Class members were damaged.

**THIRD CAUSE OF ACTION**
**Unjust Enrichment**
**(Plaintiffs Dillen Steeby and Paula McMillin, Individually, and on behalf of all Class Members)**

94.     Plaintiffs, on behalf of themselves and the proposed Class, hereby re-allege the paragraphs above as if fully set forth herein.

95.     Toyota had knowledge of the Defect and the serious safety risks it poses, which it failed to disclose to Plaintiffs and the Class Members.

96.     As a result of their wrongful and fraudulent acts and omissions, as set forth above, pertaining to the Defect in the Class Vehicles the concealment of the Defect and attempt to avoid honoring the warranty, Toyota obtained monies that rightfully belong to Plaintiffs and the Class members to the detriment of the Plaintiffs and the Class members.

97.     Toyota appreciated, accepted and retained the non-gratuitous benefits (i.e. profits) conferred by Plaintiff and the Class members who had no knowledge of the Defect. Plaintiffs and the Class members either paid a higher price for their Class Vehicles / warranties which actually had lower values, or paid Toyota monies for Class Vehicles / warranties that Plaintiffs and the Class Members would not have purchased had they been aware of the Defect or Toyota's warranty practices.

98.     Plaintiffs and the proposed Class members purchased and leased vehicles that they otherwise would not have, or in the alternative, would have paid less for, and now own vehicles of decreased value due to their inability to use the power sliding door function. Meanwhile, Toyota has sold more 2011 – 2016 Sienna vehicles than it otherwise could have and charged inflated prices for the vehicles including the warranty, unjustly enriching itself thereby.

99.     It would be inequitable and unjust for Toyota to retain these wrongfully obtained profits.

100.    Toyota's retention of these wrongfully-obtained profits would violate the fundamental principles of justice, equity, and good conscience.

101.    Plaintiffs and the Class are entitled to restitution of the profits unjustly obtained, plus interest.

## FOURTH CAUSE OF ACTION
### Oregon Breach of Warranty
**(Plaintiff Paula McMillin, Individually, and on behalf of the Oregon Class)**

### Express Warranty

102.    Plaintiff McMillin, on behalf of herself and the proposed Class, hereby re-alleges the paragraphs above as if fully set forth herein.

103.    Toyota provided all purchasers and lessees of Class Vehicles with an express warranty, which became a part of the basis of the bargain. As a result, this is an express warranty under Oregon Law.

104.    The defective power sliding doors and their component parts were manufactured and/or installed by Toyota in Class Vehicles and are covered by express warranty.

105.    Toyota breached the expressed warranty by:

a.    Extending a 3 year/36,000 miles New Vehicle Limited Warranty with the purchase or lease of Class Vehicles and warranting to "repair or replace any part defective in material or workmanship" at no cost to the owner or lessee;

b.    Selling and leasing Class vehicles with power sliding doors that were defective in material or workmanship, requiring repair or replacement within the warranty period; and

c.    Refusing to honor the express warranty by repairing or replacing the power doors free of charge.

106.    Toyota's breach of express warranty has deprived Plaintiff and other proposed Class members of the benefit of their bargain.

107.    Toyota also failed to honor the express warranty once it was aware of the defect, thereby allowing numerous class vehicles to arguably fall outside of the normal three-year

warranty period. But had Toyota not waited to reveal the defect, then such vehicles, including Plaintiff's vehicle, would have been covered under the warranty period.

108.     Further, by issuing the untimely recall notice, Toyota has voluntarily extended the warranty period for the instant defect by promising to fix the safety defect.

109.     As a direct and proximate cause of Toyota's breach of written warranty, Plaintiff and the proposed Class members sustained damages and other losses in an amount to be determined at trial.

110.     Plaintiff and the Class members have incurred or will incur damages including but not limited to the costs of repair of the damage to their Class Vehicles caused by the Defect, the diminution of value of their Class Vehicles, as well as the loss of the benefit of their bargain at the time they purchased or leased their Class Vehicles as described herein as a direct and proximate result of Toyota's misrepresentations about its express warranty.

111.     Plaintiff and the proposed Class members are entitled to recover damages, consequential damages, specific performance, diminution in value, costs, attorney's fees, rescission, and other appropriate relief.

**Implied Warranty**

112.     Class Vehicles qualify as "consumer good[s]" within the meaning of Or. Rev. Stat. § 72.8010(1).

113.     Toyota is the "manufacturer" of Class Vehicles within the meaning of Or. Rev. Stat. § 72.8010(3).

114.     As a result, Toyota has given an implied warranty of merchantability to all purchasers and lessees of Class Vehicles, as described by Or. Rev. Stat. § 72.8020.

115. The defective power sliding doors were manufactured and/or installed by Toyota in Class Vehicles and are covered by the implied warranty.

116. Toyota breached the implied warranty by selling and leasing Class Vehicles that are not fit for the ordinary purpose for which such vehicles are used.

117. Toyota's breach of the implied warranty has deprived Plaintiff and other proposed Class members of the benefit of their bargain.

118. As a direct and proximate cause of Toyota's breach of the implied warranty, Plaintiff and the proposed Class members sustained damages and other losses in an amount to be determined at trial.

119. Plaintiff and the Class members have incurred damages including but not limited to the costs of repair of the damage to their Class Vehicles caused by the Defect, the diminution of value of their Class Vehicles, as well as the loss of the benefit of their bargain at the time they purchased or leased their Class Vehicles as described herein as a direct and proximate result of Toyota's misrepresentations about its implied warranty.

120. Toyota also failed to honor the implied warranty at the time it was aware of the defect, thereby allowing numerous class vehicles to arguably fall outside of the normal three-year warranty period. But had Toyota not waited to reveal the defect, then such vehicles, including Plaintiff's vehicle, would have been covered under the warranty period.

121. Further, by issuing the untimely recall notice, Toyota has voluntarily extended the warranty period for the instant defect by promising to fix the safety defect.

122. Plaintiff and the proposed Class members are entitled to recover damages, consequential damages, specific performance, diminution in value, costs, attorney's fees, rescission, and other appropriate relief.

**FIFTH CAUSE OF ACTION**
**Violation of the Oregon Unlawful Trade Practices, Act**
**Or. Rev. Stat. §§ 646.605,** *et seq.*
**(Plaintiff Paula McMillin, Individually, and on behalf of the Oregon Class)**

123.     Plaintiff, on behalf of herself and the proposed Class, hereby re-alleges the paragraphs above as if fully set forth herein.

124.     Plaintiff purchased her 2013 Sienna for "personal, family, or household purposes" within the meaning of Or. Rev. Stat. §646.605.

125.     Toyota violated the Oregon Unlawful Trade Practices Act (UTPA) sections 646.608(e), (g), (i), and (t), and 646.607(1) by engaging in unlawful practices in connection with transactions – namely, the sales of Class vehicles to Plaintiff and the proposed Oregon Class – that were intended to result and did result in the sale and lease of goods to consumers.

126.     In connection with the sale and lease of 2011 – 2016 Sienna vehicles to Plaintiff and proposed Class members, Toyota failed to disclose material information – namely, that the 2011 – 2016 Sienna vehicles are defective.

127.     Toyota committed a willful violation within the meaning of Or. Rev. Stat. § 646.605(10) in that Toyota knew or should have known that its conduct was a violation and also in concealing the defect from consumers during the warranty period in an attempt to reduce its liability.

128.     The Defect created and continues to create serious safety risks, which were hidden from the consumers.

129.     As a direct and proximate result of Toyota's conduct, Plaintiff and other members of the proposed Oregon Class suffered an "ascertainable loss of money or property" within the meaning of Or. Rev. Stat. § 646.638(1) because they purchased products that were represented to have a feature of value that did not actually have that feature, and therefore, were less valuable.

Plaintiff and the Class members suffered injury-in-fact as a direct result of Toyota's violations of Oregon law in that they have purchased or leased Class Vehicles that pose an immediate safety risk and will have to be repaired or replaced. Further, they purchased a warranty that is less valuable than represented in that Toyota concealed the defect and refused to honor the warranty even after the defect was revealed.

130.    Had Toyota disclosed the true quality and defective nature of the Class Vehicles, Plaintiff and Class members would not have purchased the Class Vehicles or would have paid substantially less for them or would have presented the vehicle for repair under the warranty.

131.    Plaintiff and Class members have also been denied the use of the power sliding door feature in their Class Vehicles and suffered as a result of Toyota's conduct.

132.    As a direct and proximate result of Toyota's unfair acts or practices alleged herein, Plaintiff and the Class members were damaged.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs requests that the Court enter a judgment awarding the following relief:

a.    An order certifying the proposed class and appointing Plaintiffs and their counsel to represent the Classes and for notice to be sent to the Class;

b.    An order awarding Plaintiffs and the Class members their actual damages, and/or any other form of monetary relief provided by and pursuant law;

c.    An order awarding Plaintiffs and the Classes restitution, disgorgement or other equitable relief as the Court deems proper;

d.    An order requiring Toyota to adequately disclose and repair the Defect;

e.     An order awarding Plaintiffs and the Classes pre-judgment and post-judgment interest as allowed under the law;

f.     An order awarding Plaintiffs and the Classes reasonable attorney fees and costs of suit; and

g.     An order awarding such other and further relief as this Court may deem just and proper.


DATED: June 14, 2017                    Respectfully submitted,

                                        **WILLIAMS DIRKS DAMERON LLC**

                                        _____*/s/ Eric L. Dirks*_____
                                        Eric L. Dirks (MO Bar No. 54921)
                                        Matthew L. Dameron (MO Bar No. 52093)
                                        1100 Main Street, Suite 2600
                                        Kansas City, Missouri 64105
                                        Telephone:     (816) 945-7110
                                        Facsimile:     (816) 945-7118
                                        dirks@williamsdirks.com
                                        matt@williamsdirks.com

                                        *Counsel for Plaintiffs and the Classes*

27